UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RODERICK DAMON BRIME,

   Plaintiff,

v.             Case No. 3:25-cv-240-MMH-MCR

NICKOLAS LEON, et al.,

   Defendants.

_____

## <u>ORDER OF PARTIAL DISMISSAL WITHOUT PREJUDICE</u>

Plaintiff Roderick Damon Brime, an inmate of the Florida Department of Corrections, is proceeding on a pro se Second Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (SAC, Doc. 22), filed pursuant to the Court's Order (Doc. 21). Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights during his incarceration at Florida State Prison between September 30, 2024 and December 28, 2024. See Doc. 22 at 3, 5–6, 8–15. Plaintiff names the following individuals as Defendants: (1) Correctional Officer Nickolas Leon (Leon), in his individual capacity; (2) Captain J. Moody (Moody), in his individual and official capacity; (3) Correctional Officer C. English (English), in his individual and official capacity; (4) Medical Director F. Hughes (Hughes), in her individual and official capacity; (5) Mental Health Director G. Emanoilidis (Emanoilidis), in his individual and official capacity;

and (6) Mental Health Director M. Claussen (Claussen), in her individual and official capacity. Id. at 4.

As to Leon, Plaintiff asserts claims of excessive use of force, assault, and battery based on events that occurred on September 30, 2024. Id. at 6, 18. According to Plaintiff, he was in his cell that evening when Leon started assaulting him "by stabbing the cell window" and threatening to kill or seriously injure him. Id. at 8. Leon continued his threats even while Plaintiff was being escorted to the shower. Id. Then, at the shower, Leon used handcuffs as brass knuckles to punch Plaintiff in the stomach, and continued his threats. Id. at 9. While Plaintiff was still in handcuffs, Leon grabbed him, threw him against the shower bars, and started choking him. Id. Another officer had to intervene to stop the attack so Plaintiff could be escorted back to his cell. Id. Plaintiff alleges this incident caused him neck pain, immobility, stiffness, stomach pain, psychological problems, post-traumatic stress disorder, mental anguish, emotional damage, fear, fright, shock, and insomnia. Id. at 16.

Because of this incident, on October 3, 2024, English served Plaintiff with a disciplinary report charging Plaintiff with assaulting a correctional officer. Id. at 10. After a disciplinary hearing held on October 7, 2024, Plaintiff was found guilty and sentenced to 30 days of punitive confinement. Id. at 10–11. Plaintiff alleges that English and Moody violated his due process rights by refusing to allow him to participate in the disciplinary proceeding by calling

witnesses and presenting evidence, including his own statement about the September 30, 2024 incident. Id. at 6, 9–11, 18.

In connection with the same incident, Plaintiff also raises negligence and deliberate indifference claims against Hughes, Emanoilidis, and Claussen. Plaintiff claims that Hughes was negligent and deliberately indifferent to Plaintiff's medical needs by delaying and/or denying treatment to his neck. Id. at 6–7, 11–13, 18. Similarly, Plaintiff claims that Emanoilidis and Claussen were negligent and deliberately indifferent to Plaintiff's mental health needs by denying mental treatment. Id. at 7, 13–15, 18. As relief, Plaintiff seeks: (1) a declaration that all Defendants violated his constitutional rights; (2) an injunction ordering the Warden to expunge Plaintiff's disciplinary conviction; and (3) punitive damages against Leon ($100,000), Moody ($40,000), English ($30,000), Emanoilidis ($60,000), Claussen ($60,000), and Hughes ($60,000); or, alternatively, (4) compensatory damages against all Defendants. Id. at 19–22.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks

monetary relief against a defendant who is immune from such relief.[1] See 28 U.S.C. § 1915(e)(2)(B). As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, and therefore courts apply the same standard in both contexts.[2] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citation omitted). Moreover, under Eleventh Circuit precedent, to prevail in a § 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation."

---

[1] The Court granted Plaintiff's request to proceed as a pauper. See Order (Doc. 8).

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While not required to include detailed factual allegations, a complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

5

elements of a cause of action will not do[.]" <u>Twombly</u>, 550 U.S. at 555 (alternation and internal quotations omitted); <u>see also</u> <u>Jackson</u>, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." <u>Iqbal</u>, 556 U.S. at 678, 679. In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

In assessing the pleading, the Court must read Plaintiff's pro se allegations in a liberal fashion. <u>Haines v. Kerner</u>, 404 U.S. 519 (1972). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as <u>de facto</u> counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" <u>Alford v. Consol. Gov't of Columbus, Ga.</u>, 438 F. App'x 837, 839 (11th Cir. 2011)[3] (quoting <u>GJR</u>

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. <u>See</u> <u>McNamara v. GEICO</u>, 30 F.4th 1055, 1060–61 (11th Cir. 2022);

Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

Construing the allegations in the SAC liberally, the Court finds that Plaintiff's federal claims against Hughes, Emanoilidis, Claussen, English, and Moody must be dismissed without prejudice for failure to state a claim. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526–27 (1984)). To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct. Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer, 511 U.S. at 834).

As it relates to medical care, "the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display 'deliberate indifference to serious medical needs of prisoners.'" Keohane v. Fla.

---

see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

7

Dep't of Corr. Sec'y, 952 F.3d 1257, 1265 (11th Cir. 2020) (quoting Estelle v.

Gamble, 429 U.S. 97, 104 (1976)). Specifically, the Eleventh Circuit has

instructed that to establish liability on an Eighth Amendment deliberate

indifference claim, the plaintiff must show:

> First . . . as a threshold matter, that he suffered a deprivation that was, "objectively, 'sufficiently serious.'" [Farmer, 511 U.S. at 834].
>
> Second, . . . that the defendant acted with "subjective recklessness as used in the criminal law," id. at 839, and to do so he must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff—with the caveat, again, that even if the defendant "actually knew of a substantial risk to inmate health or safety," he "cannot be found liable under the Cruel and Unusual Punishments Clause" if he "responded reasonably to the risk." Id. at 844–45.

Wade v. McDade, 106 F.4th 1251, 1261 (11th Cir. 2024) (enumeration and

emphasis omitted);[4] see also Stalley v. Cumbie, 124 F.4th 1273, 1283 (11th Cir.

2024) (recognizing that to prevail on a deliberate indifference claim, a plaintiff

must show that he suffered "an objectively serious medical need," and that the

defendant acted with deliberate indifference to that need, meaning that the

defendant "(1) had subjective knowledge of a risk of serious harm, (2)

---

[4] The Eleventh Circuit clarified that courts in this circuit should apply the "subjective recklessness" standard "as used in the criminal law," Wade, 106 F.4th at 1253, and to the extent prior Eleventh Circuit deliberate indifference cases are not inconsistent with Wade, "they should continue to be cited as binding precedent," id. at 1265 (Jordan, J., concurring).

disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" (internal quotation marks and citations omitted))

"As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar." Swain, 961 F.3d at 1285. Importantly, medical treatment gives rise to a constitutional violation "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1271 (11th Cir. 2020) (quotations omitted). Indeed, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). Thus, a complaint that a medical provider has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Bingham, 654 F.3d at 1176 (quotations and citation omitted). The Eleventh Circuit has also noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." Bismark v.

9

Fisher, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989)). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

Construed liberally, Plaintiff's allegations against Hughes, Emanoilidis, and Claussen are insufficient to state a claim of deliberate indifference to a serious medical need. First, as to Hughes, Plaintiff seems to allege that he delayed or denied Plaintiff's treatment for extreme neck pain on October 4, 2024, October 21, 2024, and November 3, 2024. See Doc. 22 at 6–7, 11–13, 18. Plaintiff admits, however, that he saw medical personnel for his neck pain several times after the incident: on October 31, 2024, when he received Ibuprofen and non-aspirin; on November 13, 2024, when he received Ibuprofen, non-aspirin, analgesic balm, and a prescription for Ibuprofen, 600 mg; on November 19, 2024, when he underwent X-rays, which did not reveal the cause of his pain; and on December 18, 2024, at cell front. See id. at 11–13. As such, Plaintiff's deliberate indifference claim against Hughes seems to be premised on Plaintiff's disagreement with the course of his treatment. But such disagreement is insufficient to state a plausible claim for relief. See Adams, 61

10

F.3d at 1545. When an inmate has received medical care in prison, the inmate must do more than allege the care provided was "subpar or different from what [he] want[ed]." Keohane, 952 F.3d at 1266. Moreover, alleging "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment" does not support a constitutional claim under § 1983. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Indeed, "federal courts are generally reluctant to second guess [prison physicians'] medical judgments." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985). The Eleventh Circuit has instructed that "[m]edical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris, 941 F.2d at 1505. Thus, allegations of medical negligence do not satisfy the stringent deliberate indifference standard. Estelle, 429 U.S. at 106. Accordingly, even if Hughes's conduct could be considered negligent, the Constitution is not implicated by the negligent acts of prison officials. See Daniels, 474 U.S. at 330–31; Davidson, 474 U.S. at 348. As Plaintiff has not sufficiently alleged that he suffered a deprivation that was objectively, sufficiently serious, or that Hughes acted with subjective recklessness, his claim for deliberate indifference will be dismissed without prejudice.

11

For the same reasons, the Court will dismiss without prejudice Plaintiff's deliberate indifference claims against Emanoilidis and Claussen. These claims appear to be based on Defendants' denial of Plaintiff's grievances and/or requests for mental health treatment on October 22, 23, 25, 30, and 31, 2024, and November 5, 12, and 13, 2024. See Doc. 22 at 13–15. However, Plaintiff's vague and conclusory allegations of deliberate indifference are insufficient to state a claim for relief against Emanoilidis and Claussen. Plaintiff alleges he was denied mental health treatment for his insomnia with nightmares and flashbacks from the September 30, 2024 incident. See id. at 13–14. Accepting Plaintiff's allegations as true, he fails to allege that he suffered a deprivation that was objectively, sufficiently serious, or that Emanoilidis and Claussen were aware that their own conduct caused a substantial risk of serious harm to Plaintiff. Thus, Plaintiff's deliberate indifference claims against Emanoilidis and Claussen fail.

Plaintiff also alleges that he declared a psychological emergency on December 28, 2024, as instructed previously by Emanoilidis, but was still denied mental health treatment by unidentified staff who said that they "need[ed] to see blood." Id. at 15. These conclusory allegations against unidentified staff are insufficient to state a claim. Further, to the extent Plaintiff attempts to hold Emanoilidis and/or Claussen liable for the actions or omissions of their unidentified subordinates, liability under § 1983 may not be

12

premised on a theory of vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall, 610 F.3d at 709; see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) ("It is axiomatic, in [§] 1983 actions, that liability must be based on something more than a theory of respondeat superior.").

In addition, to the extent Plaintiff alleges that Emanoilidis, Claussen, and/or Hughes were deliberately indifferent because they were involved in his grievances, see Doc. 22 at 12–15, "filing a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by the grievance, even when the grievance is denied." Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013)[5] (collecting cases). There are circumstances in which a defendant's failure to act in response to an inmate's grievances may result in a constitutional violation. See Goebert v. Lee Cnty., 510 F.3d 1312, 1327–29 (11th Cir. 2007) (finding that a defendant's lack of action in response to an inmate's written complaint amounted to deliberate indifference and the delay attributable to the defendant's deliberate

---

[5] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

indifference may have caused the inmate's injury). In <u>Goebert</u>, a pregnant pretrial detainee submitted a medical complaint form, wherein she requested to see an obstetrician or a doctor outside of the county jail. 510 F.3d at 1318. The plaintiff alleged in her complaint that she had leaked amniotic fluid for approximately nine days, she had not felt any movements from her baby, and she had a history of miscarriages. <u>Id.</u> The defendant, a facility commander, responded that medical could arrange an appointment at her expense, despite the plaintiff noting in her complaint that medical staff had "ignored her daily requests for aid and had already failed to set up an appointment for her with an outside obstetrician." <u>Id.</u> at 1328. In finding that the defendant was not entitled to summary judgment, the Eleventh Circuit noted that the inmate's written complaint contained sufficient information to provide the defendant with subjective knowledge of her serious medical need, and his failure to take action in response to her complaint because he did not believe her amounted to deliberate indifference. <u>Id.</u> at 1327–28. But the facts of the present case are distinguishable from those in <u>Goebert</u>. Whereas the defendant in <u>Goebert</u> completely disregarded his duty to investigate the inmate's time-sensitive serious medical complaints, Plaintiff's allegations in this case, albeit conclusory and lacking supporting documentation, <u>see</u> Doc. 22 at 12 (informal grievance about extreme neck pain and stiffness denied by Hughes); <u>id.</u> at 13 (grievance about mental health denied by Emanoilidis); <u>id.</u> at 14 (grievance

14

about mental health denied by Claussen); id. at 15 (unidentified grievances denied or returned without action by the Warden and the Secretary); id. at 25 (same), do not suggest that prison officials "deliberately disregard[ed], without any investigation or inquiry," Plaintiff's complaints. Goebert, 510 F.3d at 1328

Turning to the Fourteenth Amendment due process claims against English and Moody, the Court finds that these claims must be dismissed without prejudice for failure to state a claim. Construing the SAC liberally, Plaintiff alleges that English and Moody refused to allow him to participate in the disciplinary proceeding by calling witnesses and presenting evidence, including his own statement, in connection with the September 30, 2024 incident. See Doc. 22 at 6, 9–11. Plaintiff further alleges that English deprived him of most of his personal property. See id. at 11.

First, to the extent Plaintiff alleges a claim of deprivation of personal property against English, this claim fails. An intentional or negligent deprivation of personal property does not constitute a Fourteenth Amendment due process violation "if a meaningful post[-]deprivation remedy for the loss is available." Hudson, 468 U.S. at 533; Jackson v. Hill, 569 F. App'x 697, 698 (11th Cir. 2014). Plaintiff has a meaningful post-deprivation remedy under Florida law because he can sue English for conversion. Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009).

15

Further, to the extent Plaintiff alleges that English and Moody denied him due process at the disciplinary proceeding, this claim also fails. Courts "examine procedural due process questions in two steps." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). First, the court "asks whether there exists a liberty or property interest which has been interfered with by the [s]tate," and second, the court "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Id. Even if a plaintiff shows a liberty interest at stake, such as the loss of good-time credits, the due process clause requires only "some evidence" to support the disciplinary decision. Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455–56.

Here, Plaintiff alleges he received a copy of the disciplinary report on October 3, 2024; he asked for an opportunity to provide his own statement about the incident, which was denied; he appeared at the disciplinary hearing on October 7, 2024; he was found guilty of the disciplinary charge based on Leon's statement; and he was sentenced to 30 days of punitive confinement. See Doc. 22 at 10–11. Accepting these allegations as true, Plaintiff's due

16

process claim necessarily fails because there was "some evidence" to support the disciplinary decision. Hill, 472 U.S. at 454; see also Wolff v. McDonnell, 418 U.S. 539, 563–67 (1974) (holding that in disciplinary proceedings resulting in a prisoner's loss of good-time credits or imposition of solitary confinement, due process requires that the prisoner be afforded "advance written notice of the claimed violation and a written statement of factfinders as to the evidence relied upon and the reasons for the disciplinary action taken"; and stating that the prisoner "should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals" (emphasis added)).

Further, assuming that Plaintiff does not allege a loss of gain-time credits,[6] the Supreme Court has held the imposition of disciplinary confinement does not trigger due process protections. See Sandin v. Conner, 515 U.S. 472, 486 (1995) ("[D]iscipline in segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."); see also Woodson v. Whitehead, 673 F. App'x 931, 933 (11th Cir. 2016) ("The Due Process Clause does not create an enforceable liberty interest in freedom from restrictive confinement while a

---

[6] Except for one passing reference to "loss of gain-time," Doc. 22 at 21, the SAC does not seem to allege that Plaintiff lost gain-time credits as a result of the disciplinary proceeding.

17

prisoner is incarcerated."). Notably, Plaintiff does not allege that he faced conditions of such a severity that they imposed an atypical and significant hardship on him in comparison to the ordinary incidents of prison life. See Sandin, 515 U.S. at 484. In sum, Plaintiff's allegations, accepted as true, fail to show a denial of due process under the Fourteenth Amendment.

Finally, to the extent Plaintiff complains the disciplinary proceeding against him resulted in a loss of gain time, he may pursue any available relief through a habeas corpus action under 28 U.S.C. § 2241 after exhausting his state court remedies as required under 28 U.S.C. § 2254. Tedesco v. Sec'y for Dep't of Corr., 190 F. App'x 752, 755–56 (11th Cir. 2006). Relatedly, while Plaintiff seeks to have his disciplinary conviction "expunged," such relief is unavailable in a § 1983 civil rights action. See Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 865 (11th Cir. 2017) ("'[I]f the relief sought by the inmate would either invalidate his conviction or sentence or change the nature or duration of his sentence, the inmate's claim must be raised in a § 2254 habeas petition, not a § 1983 civil rights action.'") (quoting Hutcherson v. Riley, 468 F.3d 750, 754 (11h Cir. 2006)).

Based on the foregoing, Plaintiff's federal claims against Moody, English, Hughes, Emanoilidis, and Claussen will be dismissed without prejudice. This leaves only the claims against Leon, for which the Court will enter a separate order regarding service of process, and the state law medical negligence claims

18

against Emanoilidis, Claussen, and Hughes, which the Court will dismiss without prejudice for failure to allege compliance with the pre-suit notice requirements of Chapter 766, Florida Statutes. See, e.g., Shands Teaching Hosp. & Clinics, Inc. v. Estate of Ashley Lawson, 175 So. 3d 327, 334 (Fla. 1st DCA 2015). Plaintiff's claims of medical negligence "aris[e] out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a). Therefore, his claims are subject to the pre-suit requirements of Florida's Medical Malpractice Act, contained in Chapter 766, Florida Statutes. See Johnson v. McNeil, 278 F. App'x 866, 871–72 (11th Cir. 2008); see also Weaver v. Myers, 229 So. 3d 1118, 1121 (Fla. 2017) ("[B]efore filing a medical negligence action in Florida, a claimant must satisfy statutory requirements, which include conducting a presuit investigation process to ascertain whether there are reasonable grounds to believe that the defendant medical provider was negligent, and that the negligence resulted in injury to the claimant."). These pre-suit requirements include, but are not limited to the following: (1) conducting a pre-suit investigation; (2) notifying each prospective defendant of the intent to initiate litigation for medical negligence; (3) and submitting to each prospective defendant a verified written medical expert opinion which corroborates the existence of reasonable grounds to initiate the litigation. See Fla. Stat. §§ 766.104, 766.106, 766.203(2). Because Plaintiff has

19

not alleged compliance with Florida's pre-suit notification requirements, his medical negligence claims will be dismissed without prejudice.

Even if Plaintiff had adequately stated medical negligence claims against Emanoilidis, Claussen, and Hughes, the Court would decline to exercise supplemental jurisdiction over those claims, because the federal claims against these Defendants, over which the Court has original jurisdiction, are due to be dismissed. "The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004). Pursuant to 28 U.S.C. § 1367(c), the Court may decline to exercise jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims." Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006). However, upon determining that it has the discretion under

20

§ 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction." Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994).

Here, judicial economy and convenience would not be served by retaining jurisdiction over Plaintiff's medical negligence claims. First, these claims are uniquely state law claims that are best addressed by the state courts. Further, although these claims relate to the treatment Plaintiff received or requested after the September 30, 2024 use-of-force incident involving Leon, they are not necessarily connected to the claims involving Leon. It appears that Plaintiff's medical negligence claims cover the period of October–December 2024, involve three separate Defendants, and would require consideration of law and facts that are different from those involving the claims against Leon. Additionally, considering that the SAC has not yet been served, the procedural posture of this case weighs in favor of declining jurisdiction over Plaintiff's state law claims. Moreover, when, as here, federal claims are dismissed prior to trial, the Eleventh Circuit Court of Appeals has "encouraged district courts to dismiss any remaining state claims." Raney, 370 F.3d at 1089; Busse v. Lee Cnty., 317 F. App'x 968, 973–74 (11th Cir. 2009) ("Since the district court 'had dismissed all claims over which it has original jurisdiction,' it therefore had the discretion not to exercise supplemental jurisdiction over [Appellant's] state law claims.

21

28 U.S.C. § 1367(c)(3). Furthermore, we expressly encourage district courts to take such action when all federal claims have been dismissed pretrial."); see also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). Therefore, upon consideration of the § 1367 factors and the "traditional rationales for pendent jurisdiction, including judicial economy and convenience," see Palmer, 22 F.3d at 1569, the Court would decline to exercise supplemental jurisdiction over Plaintiff's medical negligence claims, even if such claims had been adequately pled.[7] If Plaintiff chooses to refile his medical negligence claims, he should do so in the appropriate state court.

---

[7] The Court notes that Plaintiff will suffer no harm from the Court's decision to decline supplemental jurisdiction because federal law provides for the tolling of the state limitations period while a state claim is pending in federal court. Specifically, 28 U.S.C. § 1367(d) provides that:

> [t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

As such, even if the statute of limitations has otherwise run on Plaintiff's state law claims, Plaintiff has at least thirty days to refile his negligence claims in state court. See Dukes v. Georgia, 212 F. App'x 916, 917–18 (11th Cir. 2006); Dusek v. JPMorgan Chase & Co., 132 F. Supp. 3d 1330, 1354 n.18 (M.D. Fla. 2015).

22

Therefore, it is now **ORDERED**:

1.    The Second Amended Complaint (Doc. 22) is **DISMISSED without prejudice** as to Plaintiff's claims against J. Moody, C. English, F. Hughes, G. Emanoilidis, and M. Claussen.

2.    The Clerk shall **terminate** J. Moody, C. English, F. Hughes, G. Emanoilidis, and M. Claussen as Defendants in this case.

3.    A separate Order will enter regarding service of process on Nickolas Leon.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of April, 2026.

**MARCIA MORALES HOWARD**
Chief United States District Judge

Jax-11
c:    Roderick Damon Brime, #M85423

23